HON. THOMAS A. ROBINSON Corporation Counsel, Plattsburgh
We acknowledge receipt of your letter stating that the Common Council of the City of Plattsburgh is considering the passage of a local law which is subject to a mandatory referendum. You point out that under the provisions of Municipal Home Rule Law § 23 the referendum can be held at a special election. You inquire whether the special election may be conducted at the time of the annual city school district election. In connection with your question you state that the city has a population of less than 125,000 population and that the city school district is coterminous with the city.
If the word "concurrently" is taken to mean "existing or happening at the same time" and the word "conjointly" is taken to mean "united or in combination," there is no difficulty in arriving at a determination. Although for some of the reasons hereinafter recited in relation to the holding of such elections conjointly we feel it may not be the course of wisdom to hold the elections concurrently, we find no legal reason why two such elections can not be held concurrently, or at the same time, so long as they are separately set up and conducted.
However, we assume that your question is prompted by the desire to keep the expense of a special city election as low as possible so that if the special city election can be held conjointly with the city school district election a saving of expense might be realized by the city through joint city and school district use of and sharing the expense for election personnel, polling places, voting machines and/or ballot boxes. We further assume that a special city election is desirable so that if the referendum receives a favorable vote the local law will become effective before the next regular city election which will be held at the time of the general election in November of 1977.
We note that a special city election may be held at a time different from the date for the school district election and still would produce the desired result.
The only specific mention in the Charter of the City of Plattsburgh relating to special elections is found in section 13, which deals with city elections, and, in relation to special elections, says: "The polls of each special election in said city, shall be opened at twelve o'clock noon and closed at ten o'clock in the evening." There is other general wording in that section applicable to city elections which applies to all city elections, general or special, insofar as the same are not superseded by provisions of the Election Law. One such provision reads as follows:
 "* * * The common council shall provide polling places, ballot boxes and other necessary material in each election district in said city, for all elections in said city and the manner of conducting such elections shall in all respects conform to and be governed by the general laws of this state in respect to elections, not inconsistent with this act. * * *" (Emphasis supplied.)
We find specific provision in Election Law §§ 190 and 191 relative to special elections. Under section 191, subdivision 2, section 13 of your city charter governs as to the time the polls must be open at a special city election.
School elections in city school districts of cities with less than 125,000 inhabitants are governed by Education Law Article 53 (§§ 2601 through 2612). Under section 2602, subdivision 1, the annual school election is to be held on the first Tuesday of May; subdivision 2 authorizes the calling of special school district elections; subdivision 3 provides that the polls at school district elections be open for at least nine consecutive hours beginning not earlier than seven o'clock in the forenoon and two of which hours shall be after six o'clock in the evening and that the Board of Education, by resolution, shall determine within those guidelines what hours the polls shall be open. It thus appears that the Board of Education of your city school district could set the time for opening and closing the polls at the annual school district election for the hours which are required for a special city election under section 13 of your city charter. Note, however, that this is a matter which is solely within the discretion of the Board of Education, as are some of the other matters hereafter commented upon, and that the common council of the city has no voice in making such a decision. An initial conclusion is thus reached that if the holding of the special city election conjointly with the city school district election is otherwise proper, it could be so held only with the consent of the Board of Education.
Education Law § 2604 deals with the number and location of polling places for school district elections. These need not be the same as the city polling place locations and may be fewer in number. Usually they are fewer in number. If that is the case in your city, the increase in number would be costly to the school district and would not provide any saving to the city.
Under Election Law § 39 the polling places for the special city election must be staffed by four inspectors of election, two each of Republicans and Democrats. Under Education Law § 2607, at a school district election, there shall be three inspectors of election appointed by the Board of Education in each election district. There is no provision concerning party affiliation of these inspectors and there is authority for the Board of Education to appoint one or more additional inspectors for one or more school election districts when the Board of Education deems it appropriate. Also, there is provision that the inspectors appointed under the Education Law need not be paid as much compensation as inspectors of election for a general or special city election are paid by the governing body of the city. Under Election Law § 49, inspectors of election are paid by the city from city funds and under Education Law § 2607, school district election inspectors are paid by the school district from school district funds. There could be no saving to the city for the cost of the inspectors of election because the city must pay them at a special city election the same amount fixed for such inspectors to work the day of the general election and, although the school district might appoint those same people and it could pay them a lesser amount than would otherwise be the case, the addition of one inspector who otherwise might not be necessary for the school district election could well cost the city school district more money than would be the case if the elections were held separately.
The qualifications of voters at a special city election are that only registered voters are entitled to vote. Election Law § 352, subdivision 1, authorizes those same registered voters to vote in the city school district election. However, under Education Law §§ 2603 and 2606 relating to qualifications of voters and registration of voters, it is entirely possible for an individual to register to vote at a city school district election even though that person is not a registered voter under the provisions of the Election Law. This would mean that at each polling place there would have to be two lists of registered voters, one for the school district election and one for the special city election, which will not be identical in all respects. Thus, if one municipal unit uses voting machines, the other municipal unit would have to use separate voting machines or paper ballots. Another option would be that each municipal unit could use its own separate paper ballots. This duplication of equipment is necessary in spite of the fact that almost all of the voters would qualify to vote in each election. This obviously would not result in the saving of any expense to either municipal unit and might increase the expense of one or both of them.
School district elections have been scheduled by the Legislature at a time of the year which is not coincident with other municipal elections or with the general election so that the selection of school district officers will be based upon individual qualifications unmixed with partisan considerations. The word "partisan" is here used to include not only political party affiliation but also support of or opposition to propositions unrelated to the educational process but which might, entirely aside from political party affiliation, cause a sharp division of opinion within a community.
We have been told informally that the New York State Board of Elections feels the holding conjointly of two such disparate elections tends to produce a distorted electorate for each portion thereof.
In our opinion, it is possible, but undesirable, to conduct a special city election concurrently with such a city school district election but only if the two are separately set up and conducted but that it is not possible to conduct such elections conjointly: the carefully created statutory differences applicable to each of the two kinds of election make the conclusion inescapable that it would be contrary to public policy of the state to allow such conjoint elections.